NO.
12-10-00045-CR

                        

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

EFRAIN
CONTRERAS,                                   §                 APPEAL FROM THE 241ST

APPELLANT

 

V.                                                                         §                 JUDICIAL
DISTRICT COURT

 

THE
STATE OF TEXAS,

APPELLEE                                                        §                 SMITH
COUNTY, TEXAS

                                                        
                                           

MEMORANDUM OPINION

            Efrain
Contreras appeals his conviction for aggravated sexual assault of a child.  In
his sole issue on appeal, he argues that the trial court erred by allowing
impermissible testimony on the ultimate issue of guilt.  We affirm.

 

Background

In
May 2009, Orkuidia Miller, a City Finance employee, attempted to collect money
for her employer at the home of the borrower.  When she arrived, Miller
observed Appellant, whom she had recognized from other unrelated transactions
at her place of employment, touching a child’s buttocks and “private parts” in
a “very perverted way” while attempting to pull the child on top of him.  She
also saw a woman near Appellant and the child.  According to Miller, the woman
could see Appellant’s conduct and seemed unconcerned. 

Miller,
however, was concerned and contacted police.  Officer Mark Lee of the Tyler
Police Department arrived at the home.  It was determined that the child was
the woman’s six year old daughter.  Based on Officer Lee’s preliminary
findings, a formal investigation ensued.  Michelle Brock, a detective in the
major crimes and crimes against children division of the Tyler Police
Department, led the investigation.  Nurse Susan Hinson conducted a sexual
assault nurse examination (SANE) on the child.  Rebecca Cunio conducted a
forensic interview with the child at the Children’s Advocacy Center (CAC). 
During the interview, the child implicated Appellant in acts of sexual abuse
against her.  The child’s mother was also interviewed and stated that she often
prostituted herself while her children were lying on the same bed with her and
the client.  She also stated that Appellant was a frequent client and that she
had observed him contact or penetrate her daughter’s vagina with his penis on
at least one other occasion. 

Appellant
was arrested and later indicted for the offense of aggravated sexual assault of
a child.  He entered a plea of “not guilty,” and was later tried, convicted,
and sentenced by a jury to life imprisonment.  This appeal followed.

 

Impermissible
Testimony 

            In
his sole issue, Appellant argues that “the trial court erred by allowing
impermissible testimony on the ultimate issue of guilt.” 

Standard
of Review 

A
trial court’s decision to admit evidence over an objection is reviewed for
abuse of discretion.  McCarty v. State, 257 S.W.3d 238, 239 (Tex.
Crim. App. 2008).  If the decision of the trial court is within the zone of
reasonable disagreement and was correct under any theory of law applicable to
the case, it will be upheld on appeal.  Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1990).

Applicable
Law

To
preserve an admissibility of evidence complaint for our review, a party must
have presented to the trial court a timely request, objection, or motion that
states the specific grounds for the desired ruling.  See Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a); see also Martinez
v. State, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000).  Should a party
fail to do so, any error in the admission of the evidence is not preserved and
the complaint is waived.  Martinez, 22 S.W.3d at 507.  Moreover,
to preserve a complaint for appellate review, the issue on appeal must comport
with the objection raised at trial.  Wilson v. State, 71 S.W.3d
346, 349 (Tex. Crim. App. 2002).

Rules
33.1 and 103 are “judge protecting” rules of error preservation.  See Martinez
v. State, 91 S.W.3d 331, 335 (Tex. Crim. App. 2002).  The basic
principle of both rules is that of “party responsibility.”  Id. 
Thus, the party complaining on appeal about a trial court’s admission of
evidence must, at the earliest opportunity, have done everything necessary to
bring to the trial court’s attention the rule in question and its precise and
proper application to the evidence in question.  Id. at 335-36. 
Timely and specific objections inform the trial court of the basis of the
objection and afford it the opportunity to rule on them, and also afford
opposing counsel with the opportunity to remove the objection or supply other
testimony.  Id. at 336.  Specific objections are necessary
because they promote the prevention and correction of errors such that the
judicial system and the parties are not burdened by unnecessary appeals and
retrials when the error could have been corrected by a timely and specific
objection at trial.  Id. 

An
“invading the province of the jury” objection is no longer recognized as a
valid objection.  Ortiz v. State, 834 S.W.2d 343, 348 (Tex. Crim.
App. 1992) (“invading the province of the jury” no longer valid objection to
opinion testimony); Mock v. State, 848 S.W.2d 215, 225 (Tex.
App.–El Paso 1992, pet. ref’d); see also Tex. R. Evid. 704.  “The doctrine which prohibited testimony
that would invade the province of the jury ‘is and has been long dead’ as a
proposition of law.”  Mays v. State, 563 S.W.2d 260, 263 (Tex.
Crim. App. 1978) (quoting Boyde v. State, 513 S.W.3d 588, 590
(Tex. Crim. App. 1974)). 

The
erroneous admission of expert testimony that the victim is telling the truth in
a sexual assault case is nonconstitutional error.  See Barshaw v. State,
No. PD-1615-10, 2011 WL 2555661, at *1-2 (Tex. Crim. App. June 29, 2011) (slip.
op.); see also Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim.
App. 2001).  A nonconstitutional error must be disregarded unless it affects
the defendant’s substantial rights.  Tex.
R. Evid. 103(a); Tex. R. App. P.
44.2(b).  This court will not overturn a criminal conviction for nonconstitutional
error if, after examining the record as a whole, it has “fair assurance that
the error did not influence the jury, or influenced the jury only slightly.”  Schutz,
63 S.W.3d at 444.  In considering the potential harm, the focus is not on
whether the outcome of the trial was proper despite the error, but whether the
error had a substantial or injurious effect or influence on the jury’s verdict.
 See Barshaw, No. PD-1615-10, 2011 WL 2555661 at *2 (citing Wesbrook
v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)).  A conviction
must be reversed for nonconstitutional error if the reviewing court has grave
doubt that the result of the trial was free from the substantial effect of the
error.  Id. (citing Burnett v. State, 88 S.W.3d
633, 637 (Tex. Crim. App. 2002)).  “Grave doubt” means that “in the judge’s
mind, the matter is so evenly balanced that he feels himself in virtual
equipoise as to the harmlessness of the error.”  Id.  “[I]n cases
of grave doubt as to harmlessness the petitioner must win.”  Id. 

In
assessing the likelihood that the jury’s decision was improperly influenced,
the appellate court must consider everything in the record, including any
testimony or physical evidence admitted for the jury’s consideration, the
nature of the evidence supporting the verdict, and the character of the alleged
error and how it might be considered in connection with other evidence in the
case.  Id. (citing Morales v. State, 32 S.W.3d 862,
867 (Tex. Crim. App. 2000); Haley v. State, 173 S.W.3d 510,
518–19 (Tex. Crim. App. 2005)).  The reviewing court may also consider the jury
instruction given by the trial judge, the State’s theory, defensive theories,
closing arguments, voir dire, and whether the State emphasized the error.  Id.
(citing Motilla v. State, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002)).

Discussion

At
trial, Detective Brock testified that during her forensic interview, the child
stated that “Chucky” conducted acts of sexual abuse against her.  The detective
also alluded to the fact that “Chucky” was a doll in a series of popular horror
films, and that the child “projected” her abuse onto the “Chucky” doll in the
film franchise when the child was actually referring to Appellant. 

On
cross examination, defense counsel elicited testimony from Detective Brock that
even though children often project acts of sexual abuse that actually occurred
onto fictional characters, sometimes both the characters and the alleged abuse
are fictional.   

On
redirect examination, the State responded to the suggestion by defense counsel
that the child made up the events as follows:

 

[State’s
Counsel:] Now, [defense counsel] asked you, you know, sometimes kids will say,
you know, the Chucky doll did this; sometimes they’re just making this up.  Do
you remember that?

 

[Detective
Brock:] Yes.

 

[State’s
Counsel:] Let me ask you this just to put it out there.  Detective, do you
believe that [the child] is making this up?

 

[Detective
Brock:] I do not.

 

[Defense
Counsel:] I’m going to object, invading the province of the jury.

 

[The
Court:] The Court overrules the objection.  The Court overrules the objection
based on the cross of the witness.  And she’s allowed to answer that question. 

 

[State’s
Counsel:] Based on your entire investigation, do you believe that the defendant
committed the offense of aggravated sexual assault of a child by sticking his
penis into [the child’s] six-year-old vagina?

 

[Defense
Counsel:] Your Honor, I object, invading the province of the jury.

 

[The
Court:] Rephrase that.

 

[State’s
Counsel:] When you say she wasn’t making this up, did you believe the defendant
committed this offense?

 

[Defense
Counsel:] Same objection.

 

[The
Court:] The Court overrules the objection based on the cross of the witness. Go
ahead.

 

[Detective
Brock:] Could you repeat the question?

 

[State’s
Counsel:] Based on your investigation, do you believe that the defendant
committed the offense of aggravated sexual assault of a child?

 

[Detective
Brock:] I do. 

 

[State’s
Counsel:] Is there any doubt in your mind about that? 

 

[Detective
Brock:] No.

 

 

            Appellant
contends that the admission of this testimony was improper expert testimony on
the ultimate issue of fact to be decided by the jury.  See, e.g., Yount
v. State, 872 S.W.2d 706, 712 (Tex. Crim. App. 1993); Duckett v.
State, 797 S.W.2d 906, 920 (Tex. Crim. App. 1990), overruled on
other grounds, Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim.
App. 1993).  The State argues, however, that Appellant’s “invading the province
of the jury” objection was insufficient to preserve any error in the admission
of this testimony.  

            Appellant
concedes that “invading the province of the jury” is an objection that does not
always preserve error.  However, he relies on Woods v. State in
arguing that he preserved the issue for appeal.   See generally Woods v.
State, 13 S.W.3d 100 (Tex. App.—Texarkana 2000, pet. ref’d).  In Woods,
the State called six witnesses to testify that they had viewed a surveillance
videotape of a robbery and that, based on their viewing of the videotape, the
defendant was the person shown committing the crime.  Three of these witnesses
were police officers, and there was no evidence that they had seen the
defendant before trial.  Id. at 102-03.  The defendant objected
that the testimony of all six witnesses invaded the province of the jury, and
also objected to bolstering.  Id. at 105.  The court held that
the objection of bolstering, especially when accompanied by the objection of
invading the province of the jury, preserved error on the question of whether
the testimony of these witnesses was admissible.  See id. at
104-05.  The court stated further that in the context of the objection,
invading the province of the jury was “probably sufficient to inform the trial
court as to the nature of the objection.”  Id. at 105.  But the
court’s preservation holding was based on both objections taken together.  See
id.  

The
only objection made in the instant case was “invading the province of the
jury.”  Therefore, Woods is distinguishable from this case. 
Accordingly, we hold that without an accompanying timely, specific, and valid
objection during the trial that comports with the argument made on appeal,
Appellant’s “invading the province of the jury” amounts to no objection at all
and preserved nothing for our review.  See Ortiz, 834 S.W.2d at
348.

Even
if we were to hold that Appellant preserved error in challenging Detective
Brock’s testimony, Appellant cannot show that he was harmed by its admission.  Miller
testified that she saw Appellant touch the victim in an inappropriate manner.  It
is clear that without her actions in contacting the police, the sexual abuse
may not have been discovered.  The victim testified that Appellant touched her
inappropriately with his hand and that his genitals contacted her genitals on
more than one occasion.  The victim’s mother, a prostitute, admitted that she
saw Appellant grabbing the victim’s bottom and crotch on the day in question,
and that she saw Appellant penetrate the victim’s vagina with his penis. All of
this testimony corroborated Miller’s discovery of sexual abuse.

There
were some variances in the testimony as to whether the victim and Appellant
were clothed or not during the assault and the timing of the assaults.  It was
also shown that the victim’s mother suffered from some sort of cognitive
disabilities and that she had a ninth grade education.  She later testified
that she used crack cocaine and that she had difficulty remembering the precise
details of the incident in question, but admitted again during recross
examination that she witnessed Appellant touching the victim inappropriately
and that she witnessed him attempting to have intercourse with the victim.

Nurse
Hinson testified that the victim’s perineum was red and swollen, although, due
to the passage of time, she could not conclude with certainty that it was
caused by sexual abuse.  Nurse Hinson also stated that the victim did not make
a specific outcry concerning her abuse, but was allowed to testify to
statements made by the victim without objection as follows:

 

[These
are] her words.  I asked her, were there any problems or had she been hurt or
was there anything going on, and she said, “Yes.  This boy couldn’t get in our
house.  He was so mad. My momma told [him], ‘no, you can’t mess with [my
sister].’  His name is Efrain.  She’s [calling] 9-1-1, I’ll call. Efrain hurt
[my sister].  He raped her and he needs to go to jail.” 

[I
asked her,] “Did you see?”

                [She
said,] “Yes.  He was pulling his pants, put his wiener in her privates.  My
sister was then somewhere else.  He came on the back porch.  Then he hit me.  My
mom saw him and he didn’t listen.”

                [I
asked her,] “Happened more than one time?”

                [She
said,] “A lot of times.  I slapped him.  He told me ‘bring my sister out.’  I
told her, ‘Sissy, I saved your life.’  Boogieman, my cousin, said, ‘it was
rape.’ ”

 

            Detective
Brock also testified without objection that during the CAC interview, the
victim demonstrated vast knowledge of sexual terms and activities, and due to
her mother’s lifestyle and the family’s living conditions, it became clear that
the victim was “exposed to porn and sex on a daily basis.”  In the interview,
the six year old victim described, in shocking detail, the acts committed
against her by Appellant while using derogatory terms that only an adult would
know.  Detective Brock quoted the description of the events provided by the
victim.  Suffice it to say that the words used to describe the abuse by the
victim are so graphic that they need not be repeated here.  Appellant did not
object to any of this testimony. 

Additionally,
Appellant did not testify, nor did he call any witnesses.  The State did
emphasize the complained of testimony when it occurred, and also referenced it
during the jury argument.  However, the State discussed not only the complained
of evidence, but all of the testimony from all the witnesses, including the
victim, Nurse Hinson, and the victim’s mother.  The State also reminded the
jury members that they decide which witnesses to believe.  The guilt-innocence
phase of the trial, including opening statements and jury argument, consumed
less than 160 pages of the reporter’s record.  Having reviewed the entire
record as a whole, we are left with fair assurance that the evidence did not
influence the jury, or influenced the jury only slightly.  See Schutz,
63 S.W.3d at 444.

Appellant’s
sole issue is overruled.

 

Disposition

            We
affirm the judgment of the trial court.

   
SAM GRIFFITH   

        
Justice

Opinion delivered July 29, 2011.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.

 

(DO NOT PUBLISH)